FILED
2023 Jun-29 AM 11:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **CALEB WOODS; ISABELLA** | ) | |
| **MESEROLE; AYANA VARNES;** | ) | |
| **YURELI VAZQUEZ;** | ) | |
| **ALEXA HUERTA; ALEXIS** | ) | |
| **HUNTER; HANNAH SOLARES** | ) | |
| **on behalf of themselves and others** | ) | **CIVIL ACTION NO.:** |
| **similarly situated** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **STONE AGE KOREAN BBQ LLC;** | ) | |
| **SHAOZHOU JIANG, a/k/a** | ) | |
| **SAM JAI-ANG (individually)** | ) | |
| | ) | **JURY DEMAND** |
| **Defendants.** | ) | |

## COMPLAINT

Come now the Plaintiffs Caleb Woods, Isabella Meserole, Ayana Varnes, Yureli Vazquez**,** Alexa Huerta, Alexis Hunter and Hannah Solares, on behalf of themselves and others similarly situated, and file this Complaint against Defendants Stone Age Korean BBQ, LLC and Shaozhou Jiang, a/k/a Sam Jai-Ang (individually), collectively referred to as "Defendants." The Plaintiffs seek to recover damages caused by Defendants for violations of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201 *et. seq*., and state law claims for Breach of Contract, Unjust

1

Enrichment, and Conversion. The named Plaintiffs propose to represent an "Opt-In" class to address violations of the FLSA.

**OVERVIEW**

1.     This action brings claims pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq*., and, specifically, the collective action provision of the Act found at §216(b), on behalf of the named plaintiffs and an FLSA opt-in class in order to include other similarly situated employees for equitable and declaratory relief and to remedy violations of the wage provisions of the FLSA by Defendants.

2.     Plaintiffs seek court approval to assert their FLSA claims on behalf of an FLSA opt-in class in order to include other similarly situated employees who are or were employed at Stone Age Korean BBQ within the last three years in the capacity of "tipped employees" (hereinafter "FLSA Class").

3.     Plaintiffs, and the FLSA class they seek to represent, seek recovery of misappropriated tip monies, unpaid wages and overtime compensation, together with an equal amount of liquidated damages, attorneys' fees, and costs pursuant to 29 U.S.C. §216(b). Plaintiffs also seek to be compensated at or above the minium wage of $7.25 per hour for all non-tip producing tasks performed in excess of the 80/20% rule prescribed by the FLSA.

4.     For up to three years prior to the filing of this complaint, Defendants have and had a uniform policy and practice of requiring employees to participate in a tip pool from which the employer illegally took a portion of the employees' tips. Under that policy and practice, the employer took a "house tip" from the employee's collected tips, a figure calculated as 3% of the total sales made by the employee for that period. The employer also took 5% of the servers' credit card tips on each shift and required those to be paid from the servers' cash tips. These actions and policies of the Defendants violated the FLSA and illegally took thousands of dollars from the Plaintiffs.

5.     Plaintiffs also assert state law claims for damages against the named Defendants, jointly and severally, under Alabama common law for breach of contract, unjust enrichment and conversion.

## JURISDICTION AND VENUE

6.     All events and occurrences giving rise to the causes of action stated herein occurred in and around Madison County, Alabama. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 since all, or at least a substantial part of the events giving rise to Plaintiffs, the FLSA Class, occurred in and around Huntsville, Alabama, in Madison, County.

7.     This Court has subject matter jurisdiction over this action pursuant to 28

U.S.C. §1331. Venue is proper in the Northern District of Alabama pursuant to 28 U.S.C. §1391(b).

8.    Jurisdiction in this Court is proper as the claims are brought pursuant to the FLSA, as amended, 29 U.S.C. § 201, *et seq*., to recover unpaid compensation, statutory wages, overtime compensation, and additional equal amounts as liquidated damages, and reasonable attorneys' fees and costs.

9.    Defendants are subject to personal jurisdiction in this district as they regularly do business throughout the State of Alabama and Madison County for their business, including the one where Plaintiffs, the FLSA Class, were Defendants' employees.

10.    At all times relevant to this case, Defendants were and have been an enterprise engaged in commerce as defined by §203(s)(1) of the Act.

11.    The Court also has supplemental jurisdiction over the state claims asserted herein pursuant to 28 U.S.C. §1367.

## PARTIES

12.    Plaintiff Caleb Woods ("Mr. Woods") resides in Huntsville, Alabama. From August 15, 2021 through at least May 2023, Mr. Woods was employed by Defendants as a server at Stone Age Korean BBQ's Huntsville Location.

13.    Plaintiff Ayana Varnes ("Ms. Varnes") resides in Huntsville, Alabama.

From August 2022 until at least May 2023, Ms. Varnes was employed by Defendants as a server at Stone Age Korean BBQ's Huntsville Location.

14.    Plaintiff Yureli Vazquez ("Ms. Vazquez") resides in Huntsville, Alabama.  Ms. Vazquez was employed by Defendants as a server at Stone Age Korean BBQ's Huntsville Location from September 2022 through at least March 2023.

15.    Plaintiff Isabella Meserole ("Ms. Meserole") resides in Huntsville, Alabama.  Ms. Meserole was employed by Defendants as a server at Stone Age Korean BBQ's Huntsville Location from February 15, 2021 through at least May 2023.

16.    Plaintiff Alexis Hunter ("Ms. Hunter") resides in Huntsville, Alabama. Ms. Hunter was employed by Defendants as a server at Stone Age Korean BBQ's Huntsville Location from September 2020 through at least May 2023.

17.    Plaintiff Alexa Huerta ("Ms. Huerta") resides in Huntsville, Alabama. Ms. Huerta was employed by Defendants as a server at Stone Age Korean BBQ's Huntsville Location from May 2022 through at least May 2023.

18.    Plaintiff Hannah Solares ("Ms. Solares") resides in Huntsville, Alabama. Ms. Huerta was employed by Defendants as a server at Stone Age Korean BBQ's Huntsville Location from June 2022 through at least February 2023.

19.     Plaintiffs Woods, Huerta, Varnes, Meserole, Hunter, Vazquez and Solares submit their written consent to become party plaintiffs to this action pursuant to 29 U.S.C. §216(b) (Exhibit 1).

20.     The putative FLSA Opt-In class includes similarly situated employees who are or were employed as "tipped" employees at Stone Age Korean BBQ within the last three years.

21.     Defendant Stone Age Korean BBQ, LLC ("Stone Age Korean BBQ") is an Alabama Limited Liability Company (AL Entity ID No.: 000-546-566) conducting business in the State of Alabama at 2319 Memorial Parkway, SW, Suite 125, Huntsville, AL 35801.

22.     At all relevant times alleged herein, Stone Age Korean BBQ was the employer of the named Plaintiffs and all other similarly situated employees.

23.     Defendant Shaozhou Jiang, a/k/a Sam Jai-Ang ("Mr. Jai-Ang"), is over the age of 19 and a resident of Huntsville in Madison County, Alabama. Mr. Jai-Ang is an owner and a managing member of Stone Age Korean BBQ, LLC. At all relevant times alleged herein, Mr. Jai-Ang, as manager, was deemed the employer of the named Plaintiffs and all other similarly situated employees.

### FACTS

24.     Defendants Stone Age Korean BBQ and Mr. Jai-Ang own and operate

a restaurant in Huntsville, Madison County, Alabama, which is an enterprise engaged in interstate commerce whose employees are engaged in interstate commerce and whose employees handle and/or work on goods that have been moved in and/or produced in commerce as defined by §203(s)(1) of the FLSA. Its annual gross volume of business exceeds $500,000.00.

26. At all times relevant to this action, Defendant Stone Age Korean BBQ was an "employer" of Plaintiffs and putative FLSA class as defined by §203(d) of the FLSA.

26. At all times relevant to this action, Mr. Jai-Ang had and regularly exercised authority to: (a) hire and fire employees of Stone Age Korean BBQ; (b) determine the work schedules for the employees of Stone Age Korean BBQ; (c) control the contracts, finances and operations of Stone Age Korean BBQ; and (d) was directly responsible and/or instrumental in determining how Plaintiffs and those similarly situated like Plaintiffs were paid for tips received as bartenders and servers for Stone Age Korean BBQ.  Mr. Jai-Ang regularly exercised that authority on behalf of the Stone Age Korean BBQ operation.

27. At all times material to this action, Plaintiffs, and all other similarly situated tipped employees (the "FLSA Class"), were "employees" as defined by §203(e)(1) of the FLSA and were "tipped employees" as defined by §203(t) of the

FLSA, who all worked for Defendants within the territory of the United States within three years preceding the filing of this lawsuit such that §207 of the FLSA apply to the Defendants.

28.    Plaintiffs and all other similarly situated Servers employed by Defendants as tipped employees and were paid an hourly wage of $2.13 per hour plus tips for which the Defendants took a tip credit.

29.    Defendants required the Plaintiffs to participate in an invalid tip pool.

30.    From the Plaintiffs' earned tips, Defendants calculated 3% of their food sales for each shift and then deducted that amount from the Plaintiffs' tips.

31.    Defendants also took 5% of the Plaintiffs' credit card tips from each shift which the Plaintiffs were required to pay from the cash tips they earned. Defendants claimed that these cash payments would be shared with the other non-tip employee staff.

32.    The Plaintiff Servers were required to report to work approximately half an hour before their shift and before Defendants opened its doors at the restaurant or began serving customers.

33.    Despite being required to report for work before their shift, Plaintiffs were prohibited from clocking in on the clock but were required to perform non-serving duties, for which they were not compensated.

34.     The pre-shift non-tip earning duties performed included, among other duties, wiping down the dining hall tables, wiping down computer screens, arranging tabletop fixtures, preparing kitchen and food items, stocking, setting chairs.

35.     In addition to their normal server duties, Plaintiffs and similarly situated tipped servers are also required to prepare food, clean, load/unload/stock food in coolers, prepare and create side dishes, prepare Stone Age's signature sauces, cook for customers, as well teach customers about Korean barbecue.

36.     At the end of their shift time serving tables, Plaintiff Servers were also required to perform further non tip-producing duties for approximately thirty minutes for which they were not compensated.

37.     As a result of pre-shift, post-shift and other required duties, Plaintiffs spent in excess of 20% of their working time performing non-tip-producing activities before, during, and after their shift for which they were not compensated.

38.     These non-tip producing duties take up a large majority of each shift.

39.     If a server is designated a "server captain" for a shift, their pay is increased from $2.13 per hour to $4.00 per hour, plus the ability to earn tips.

40.     At the end of each shift, Plaintiffs and similarly situated servers would "settle up" with Defendants' managers who oversaw the shift. During this time, Defendants' managers would review the credit card tips and gross sales of Plaintiffs

and similarly situated servers.

41.    During this "settling up," Defendants calculated 3% of the gross sales made by each Plaintiff and deducted that amount from the credit card tips Plaintiffs and similarly situated servers earned during their shift keeping that as a "house tip."

42.    Next in "settling up," Defendants calculated the credit card tips each Plaintiff and similarly situated tipped employee generated during their shift and required Plaintiffs and similarly situated servers to pay Defendants 5% of the credit card tips they made that shift in cash which was taken from the cash tips earned by Plaintiffs and similarly situated tipped employees.

43.    The majority of the tips received by Plaintiffs and similarly situated tipped employees were paid by credit and/or debit cards.

44.    If Plaintiffs and similarly situated tipped employees did not have enough cash on hand at the end of their shift to pay the 5% of credit card tips Defendants demanded, they were ordered to bring the same amount in cash by the start of their next scheduled shift. Defendants kept track of each outstanding balance owed by recording the same on pieces of paper held by the managers in an envelope.

**COUNT ONE**
**VIOLATION OF FLSA**

Plaintiffs incorporate by reference the above and foregoing paragraphs and

make them a part hereof.

45.     Plaintiffs Caleb Woods, Isabella Meserole, Ayana Varnes, Yureli Vazquez, Alexa Huerta, Alexis Hunter, Hannah Solares, and the FLSA class make their claims under the FLSA seeking approval as an opt-in class action pursuant to the FLSA on behalf of all similarly situated tipped employees ("FLSA Class") who were employed by Stone Age Korean BBQ at any time within the past three years.

46.     Plaintiffs and all other similarly situated employees were not paid at least the minimum wage for the pre- and post-shift time and other time they spent in performing non-tip producing duties.

47.     During their shift, Plaintiffs, and all similarly situated servers, bartenders, and tipped employees, worked at least two and half hours performing non-tip producing and tasks for Defendants. Despite this, Defendants paid Plaintiffs $2.13 per hour for performing non-tip producing duties, back of the house and janitorial tasks.

48.     Duties performed during this time included washing windows, cleaning sections, wiping down tables, chairs, window ledges, and baseboards, making tea, which involved retrieving drink containers, tea bags, and sugar from the back and mixing them, setting up tables and server stations which involved filling table caddies with sugar items and condiments, filling salt and pepper shakers, maintaining the

salad and buffet items, stocking and unlading coolers, filling bread baskets, stocking server stations with to-go items, silverware, napkins, paper towels, and any supplies that would be needed throughout the shift that day/night, and bus their own tables. Time spent on these non-tip producing activities was not occasional, incidental, or insignificant; it was substantial.

49.    Plaintiffs and other similarly situated servers were also required to wait to until the last customer at the entire location left, even if their particular section had no more customers.

50.    Once a shift concluded, Defendants only permitted Plaintiffs and similarly situated servers to leave after the manager performed a final walk-through of the Stone Age Korean BBQ facility upon the completion of the assigned post-shift tasks.

51.    Plaintiffs, and other similarly situated tipped employees, are not compensated for this time spent waiting.

52.    Defendants improperly claimed the FLSA tip credit (29 U.S.C. § 203(m)) for time spent performing this non tip-producing work.

53.    Each Plaintiff was employed by the Defendants for work as a server at an hourly rate of $2.13 per hour plus their tips.

54.    During their employment, each Plaintiff sold and served food and

beverages to customers for which the customers paid and often included a tip intended to be for the Plaintiffs.

55.    The vast majority of these tips were included on credit or debit card transactions, but some were paid in cash as well.

56.    However, rather than giving these tips to Plaintiffs, Defendants kept a portion of the tips for themselves in violation of 29 U.S.C. § 203(m)(2)(B).

57.    Defendants' conduct as described herein was willful in that they either knew or showed reckless disregard as to whether their conduct violated the FLSA.

58.    Defendants' conduct as described herein was not based in good faith or with a reasonable belief that they were in compliance with the FLSA.

59.    As a result of Defendants' unlawful conduct, Plaintiffs are entitled to actual and compensatory damages, to include the tips illegally withheld and which should have been paid to Plaintiffs, together with an award of liquidated damages in an amount equal to tips withheld by Defendants, attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

60.    Defendants were fully aware of the duties performed by Plaintiffs and the FLSA putative Class members, and that those duties were not exempt from the minimum wage and other applicable provisions of the FLSA and/or the federal wage and hour regulations such that Defendants' violations of the FLSA and/or its

regulations were willful, repeated, knowing, intentional and without a good faith basis, which significantly damaged Plaintiffs and the FLSA Class members.

61.    Caleb Woods, Isabella Meserole, Ayana Varnes, Yureli Vazquez, Alexa Huerta, Alexis Hunter, Hannah Solares and all other similarly situated tipped employees of the Defendants are entitled to recover unpaid compensation in the form of unpaid and illegally withheld tips, pursuant to the FLSA.

62.    For up to three years prior to the filing of this complaint, Defendants repeatedly and willfully violated § 3(m)(2)(B) of the Act by requiring Caleb Woods, Isabella Meserole, Ayana Varnes, Yureli Vazquez, Alexa Huerta, Alexis Hunter, Hannah Solares and all other similarly situated tipped employees to participate in an invalid tip pool in which Defendants unlawfully kept servers' tips for their own purpose in violation of § 203(m)(2)(B) of the Act.

63.    At the end of each shift, Defendants required the tipped employees to share their tips with the "house."

64.    Defendants took from Plaintiffs and similarly situated tipped employees a portion of their tips calculated as 3% of each Plaintiff's food sales for that particular shift. Additionally, Defendants also took 5% of the credit card tips for each Plaintiffs on each shift which was collected in cash from the Plaintiffs' cash tips or other funds.

65.    As a result of Defendants' conduct, Defendants are liable to Plaintiffs

and the FLSA Class for the full amount of the tips unlawfully kept by the employer, the unpaid wages owed, the unlawfully deducted wages, an additional amount as liquidated damages, plus the attorneys' fees and costs incurred by Plaintiffs and the FLSA Class.

## OPT-IN CLASS REQUEST

66.     The named Plaintiffs seek Court approval to represent and "Opt-In" class of similarly situated tipped employees who are or were previously employed by Defendants as tipped employees within three (3) years prior to the filing of this Complaint.

67.     The basic job duties of the FLSA putative Class were the same as or substantially similar to those of the named Plaintiffs, and the FLSA Class members were paid in the same manner and under Defendants' same common policies, plans and practices as the named Plaintiffs.

68.     The members of the FLSA putative Class, like Plaintiffs, all have been subject to the same unlawful policies, plans and practices of Defendants, including not paying the prevailing minimum wage for all hours worked, unlawfully retaining a portion of their tips, making unlawful deductions, and not paying at least minimum wage for pre- and post-shift and non-tip producing hours.

69.     Certification of the FLSA Class' claims as a class action is the most

efficient and economical means of resolving the questions of law and fact common to Plaintiffs' claims and the claims of the FLSA Putative Class. Plaintiffs have standing to seek such relief because of the adverse effect that Defendants' unlawful compensation policies and practices have had on them individually and on the FLSA Putative Class.

70.     Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations. Certification of the FLSA Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiff, the FLSA Class and Defendants.

71.     Upon information and belief, thirty-four (34) individual employees (current and former) make up the putative FLSA Class. This number is subject to change as discovery progresses and the number is only used for purposes of notice.

72.     The putative FLSA Class of current and former employees would benefit from the issuance of Court-Supervised Notice of the present lawsuit and the opportunity to join the present lawsuit.

73.     These similarly situated employees are known to Defendants and are readily identifiable and can be located through information contained in the

Defendants' records.

74.    As a result of Defendants' violations of the FLSA, which Plaintiffs allege are willful and not in good faith, Plaintiffs and all the putative Class members have suffered damages by failing to receive compensation in accordance with §207 of the FLSA for which they are also entitled to recover an additional equal amount as liquidated damages pursuant to 29 U.S.C. §216(b), prejudgment interest and attorneys' fees such that an opportunity to "Opt-In" should be allowed.

## COUNT TWO
### BREACH OF CONTRACT
### (AGAINST DEFENDANT STONE AGE KOREAN BBQ)

Plaintiffs incorporate by reference the above and foregoing paragraphs and make them a part hereof.

75.    Plaintiffs and the Class members accepted Stone Age Korean BBQ's offer of employment and agreed to work as tipped employees for an hourly rate of $2.13 per hour under the Defendant's promise that they would be doing work that generated tips.

76.    Since the hourly rate of $2.13 per hour is well below the minimum wage rate of $7.25, the opportunity to earn and keep tips was a necessary and material condition of the Plaintiffs' employment.

77.    The Defendants took a "tip credit" for each Plaintiff.

78.     After the Plaintiffs' were employed, they were required to participate in a tip pool from which the employer deducted sums for their own benefit.

79.     As part of its policy and practice, Stone Age Korean BBQ deducted from the tips earned by each Plaintiff and Class member a figure equal to 3% of the total sales made by each Plaintiff each shift.

80.     Also as part of its policy and practice, Stone Age Korean BBQ deducted from the tips earned by the Plaintiffs and the Class members a figure equal to 5% of each Plaintiffs' credit card tips which Defendants required each Plaintiff to pay from their cash tips earned each shift.

81.     As a result of the actions and inactions plead herein, Defendants breached their contract with Plaintiffs and Class members by which the Plaintiffs and Class members were damaged.

82.     Plaintiffs are entitled to recover compensatory damages as a result of Defendants' breach of contract.

**COUNT THREE**
**UNJUST ENRICHMENT**
**(ALL DEFENDANTS)**

Plaintiffs incorporate by reference the above and foregoing paragraphs and make them a part hereof.

83.     Stone Age Korean BBQ and Mr. Jai-Ang controlled all aspects of

Plaintiffs' and Class members' compensation, including accounting for tips, time-logs, and time-clock records. Despite this, Defendants unlawfully took Plaintiffs' and the Class members' compensation by subjecting them to an illegal tip-pool for which they never agreed to participate and from which they deducted shares for themselves.

84.     As a result of their actions and inactions, Defendants have been unjustly enriched.

85.     Plaintiffs and the Class members demand judgment against all the Defendants for the monies they unjustly obtained from the Plaintiffs.

**COUNT FOUR**
**CONVERSION**
**(AGAINST ALL DEFENDANTS)**

Plaintiffs incorporate by reference the above and foregoing paragraphs and make them a part hereof.

86.     Stone Age Korean BBQ and Mr. Jai-Ang controlled all aspects of Plaintiffs' and class members compensation, including accounting of tips, time-logs, and time-clock records.  These Defendants exercised dominion and control over Plaintiffs' and Class members' compensation and converted the same to their own benefit by subjecting those employees to an illegal tip-pool from which Defendants deducted shares for themselves.

87.     Defendants converted the tips and compensation earned by Plaintiffs and

Class members for their own use and benefit without the intention of returning the same.

88.     As a direct and proximate result of Defendants' acts, Plaintiffs and Class members have been damaged.

**WHEREFORE**, Plaintiffs, individually and on behalf of the FLSA Class, pray that upon consideration of this matter the Court will order the following relief:

a.   Certify the FLSA claims as an "Opt-In" Class and order the issuance of notice to all tipped employees who have been employed by Defendants during the three years immediately preceding the filing of this suit, informing them that this action has been filed, the nature of the action, and of their right to opt into this lawsuit if they were not paid compensation and benefits for all hours worked or tips earned pursuant to 29 U.S.C. §216(b);

b.   Designate the named Plaintiffs as representatives of the FLSA Collective Class and Plaintiffs' counsel as Class counsel;

c.   Award a Judgment in favor of the Plaintiffs and Class members for their respective unpaid compensation, tips, plus an equal amount of liquidated damages pursuant to 29 U.S.C. § 260 due to Defendants' willfulness, and pre-judgment interest against Defendants, jointly and severally;

d.   Award a Judgment against Defendants for an amount equal to Plaintiffs' and the Class members' unpaid wages at the applicable regular rate for each non-tip producing hour worked and for which they were not paid at least minimum wage;

e.   Award a reasonable attorneys' fees, including the costs and expenses of this action, against Defendants, jointly and severally, in accordance with 29 U.S.C. § 216(b);

f.    Award Plaintiffs and similarly situated Class Members such other legal, and equitable relief to which they may be entitled against Defendants, jointly and severally, for the Federal and Alabama Common law claims plead herein;

g.    Issue an order equitably tolling the FLSA statute of limitations;

## JURY DEMAND

## THE PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY.

Respectfully Submitted,

*s/ Daniel Patrick Evans*
Daniel Patrick Evans
ASB-3209-R67G
G. Daniel Evans
ASB-1661-N76G
Alexandria Parrish
ASB-2477-D66P
The Evans Law Firm, P.C.
1736 Oxmoor Road, Suite 101
Birmingham, Alabama 35209
Telephone:  (205) 870-1970
Fax: (205) 870-7763
E-Mail: dpevans@evanslawpc.com
E-Mail: gdevans@evanslawpc.com
E-Mail: ap@evanslawpc.com
*Attorney for Plaintiffs*

**Plaintiffs' address:**

c/o The Evans Law Firm, P.C.

**Defendants' addresses:**

**PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL:**

**STONE AGE KOREAN BBQ LLC**
**Serve Registered Agent:**
Ling Q. Weng
148 Sougahatchee Drive
New Market, AL 35761

**SHAOZHOU JIANG, a/k/a**
**SAM JAI-ANG**
2319 Memorial Parkway, Suite 125
Huntsville, AL 35801