FILED
2026 Sep-22 PM 02:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **CALEB WOODS, et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.: 5:23–cv–00838–MHH** |
| | } | |
| **STONE AGE KOREAN BBQ LLC, et al.,** | } | |
| | } | |
| | } | |
| **Defendants.** | } | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Caleb Woods, Isabella Meserole, Ayana Varnes, Yureli Vazquez, Alexa Huerta, Alexis Hunter, Hannah Solares, Damaris Beltran, and Lucy Donaldson, former employees of defendant Stone Age Korean BBQ, LLC, filed this action against Stone Age and Shaozhou Jiang, a/k/a Sam Jai–Ang, a part owner of Stone Age, on behalf of themselves and others similarly situated. (Doc. 10). The plaintiffs assert that the defendants violated the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et. seq*., in three ways: Stone Age did not pay the plaintiffs at least the minimum wage for the pre– and post–shift time and other time the employees spent performing non–tip producing duties; Stone Age did not pay the plaintiffs for work in excess of 40 hours a workweek, time–and–one–half of their regular rate of pay; and Stone Age fired Ms. Hunter and Ms. Huerta because they filed this lawsuit.

(Doc. 10, pp. 14–24). The plaintiffs also assert state law claims against the defendants for breach of contract, unjust enrichment, and conversion. (Doc. 10, pp. 24–26).

The plaintiffs and the defendants have filed motions for partial summary judgment. (Docs. 38, 42). The plaintiffs ask the Court to find that Mr. Jiang is an employer under the FLSA; that Stone Age's policy and practice of taking a percentage of servers' tips for themselves violates 29 U.S.C. § 203(m)(2)(B); and that the plaintiffs' compensatory damages include the tip credit plus the tips the defendants wrongfully withheld from them. (Doc. 40, p. 2). The defendants ask the court to dismiss the plaintiffs' state law claims and dismiss the plaintiffs' FLSA claims against Mr. Jiang. (Doc. 44, pp. 2–3).

To resolve the parties' cross–motions, this opinion opens with a statement of the legal standard that governs summary judgment motions. Then, consistent with that standard, the Court summarizes the evidence in the record. Finally, the Court analyzes the evidence under the substantive law that governs the parties' arguments.

**I.**

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To demonstrate a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for

summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

When considering a motion for summary judgment, a district court must view the evidence in the record in the light most favorable to the nonmoving party and draw reasonable inferences in favor of the non–moving party. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015). "[A] litigant's self–serving statements based on personal knowledge or observation can defeat summary judgment." *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (citing *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) ("To be sure, Feliciano's sworn statements are self–serving, but that alone does not permit us to disregard them at the summary judgment stage.")). Even if a district court doubts the veracity of the evidence, the court cannot make credibility determinations; that is the work of a factfinder. *Feliciano*, 707 F.3d at 1252 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Still, conclusory statements in a declaration cannot by themselves create a genuine issue of material fact. *See Stein*, 881 F.3d at 857 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Cross–motions for summary judgment do not alter the Rule 56 standard. *United States v. Oakley*, 744 F.2d 1553, 1555–56 (11th Cir. 1984). When considering cross–motions for summary judgment, district courts "should be very careful in their analysis to ensure that the proper party receives the benefit of the summary judgment standard." *FCOA LLC v. Foremost Title & Escrow Servs. LLC*, 57 F.4th 939, 959 (11th Cir.), *cert. denied*, 144 S. Ct. 103 (2023). When parties file cross–motions for summary judgment, the district court has "three options: granting summary judgment for the plaintiff under the defendant's best case, granting summary judgment for the defendant under the plaintiff's best case, or denying both motions for summary judgment and proceeding to trial." *FCOA*, 57 F.4th at 959.

**II.**

Stone Age began operating in Huntsville, Alabama, in 2020. (Doc. 39–1, pp.17:10–15, 82). Mr. Jiang owns 20% of Stone Age. (Doc. 39–1, pp. 15:8–18:5, 60:6–61:18). In their answer to the plaintiffs' amended complaint, Stone Age and Mr. Jiang admit that "they operate a restaurant in Huntsville, Alabama," and "they employed Plaintiffs." (Doc. 11, ¶¶ 26, 27; Doc. 27–9, p. 6). Stone Age and Mr. Jiang also admit that Mr. Jiang "possessed authority to act on behalf of Stone Age." (Doc. 11, ¶ 28). In his deposition, Mr. Jiang described his duties on behalf of Stone Age as managing the kitchen, approving payroll, and writing checks and making payments for supplies. (Doc. 39–1, pp. 14:3 – 15:7).

The plaintiffs are tip credit employees who Stone Age hired either as servers at a pay rate of $2.13 per hour plus tips or as server captains at a pay rate of $4.00 per hour plus tips. (Doc. 39–1, p. 35:3–10). Stone Age claimed the tip credit for every one of its tipped employees. (Doc. 27–8, p. 18; Doc. 17–9, p. 11). "The basic job duties of other tip credit employees were the same as or substantially similar to those of the named Plaintiffs." (Doc. 27–9, p. 7). The plaintiffs and similarly situated tip credit employees received cash and credit card tips. (Doc. 11, ¶ 78).

Stone Age paid the plaintiffs the same $2.13 or $4.00 hourly rate while they were performing other, non–tipped duties, such as pre–opening tasks and cleaning the restaurant before closing. (Doc. 39–1, pp. 27:1 – 28:13, 70:20 – 73:10).

Stone Age deducted from the plaintiffs' paychecks at least three percent of the gross sales the plaintiffs and other tip credit employees generated each shift. (Doc. 27–14; Doc. 27–8, pp. 8–9). Stone Age used this money to cover expenses. (Doc. 27–14; Doc. 27–8, pp. 8–9). Stone Age had its employees sign a form that stated that, "[t]o accommodate general costs and expenses incurred by [Stone Age]," its employees were "required to contribute" either "3%" or "4% of total gross sales as a deduction from [their] paycheck[s to] cover the cost of employee food, credit card fees, bartender tips, busser tips, food runner, and general wear and tear of the establishment." (Doc. 27–14; Doc. 27–8, pp. 8–9).

Stone Age paid bussers between $8.75 and $12 per hour plus tips. (Doc. 39–1, p. 33:6–9). Stone Age paid bartenders between $8.75 to $12 per hour plus tips. (Doc. 39–1, pp. 40:23 – 41:22). Stone Age paid its managers a salary. Stone Age paid its managers and bartenders a commission on alcohol sold. (Doc. 39–1, p. 33:21 – 35:10). Employees who Stone Age paid more than minimum wage shared in the three or four percent of wages deducted from the wages of tip credit employees who Stone Age paid $2.13 or $4.00 hourly. (Doc. 39–1, pp. 32:22 – 35:10, 40:23 – 41:22, 62:11 – 63:20; Doc. 27–14; Doc. 27–8, pp. 8–9).

The three or four percent deducted from the plaintiffs' paychecks was deposited into the company's "general account." (Doc. 27–8, p. 9; Doc. 27–14; Doc. 39–1, pp. 129:1 – 131:4). Stone Age "doesn't really have any other accounts." Doc. 39–1, p. 130:1–6). With regard to the deduction, Mr. Jiang testified:

> So it is like this. Actually, our manager will send the – the calculation to our accountant, and then our accountant will deduct the 3 percent from the servers' payroll, and after that — because this 3 percent should be the bonus for the managers and for the bartenders based on how much alcohol they have sold. So then this 3 percent will be added up to the manager or the bartender's payroll as the bonus for them.
>
> And for the credit card transaction fee, none of the employees need to pay for that. It's all on the house. It's our company. We pay for that.

(Doc. 39–1, pp. 62:11 – 63:20).

Stone Age paid the plaintiffs the same $2.13 or $4.00 hourly rate to perform pre–opening and closing duties such as cleaning and sorting. (Doc. 39–1, pp. 74:17

– 75:2). Because the tip credit employees earning $2.13 or $4.00 hourly complained about performing non–tipped pre–opening and closing duties at that rate, (Doc. 39–1, pp. 64:18 – 67:16), Stone Age increased the three percent deduction to four percent of total gross sales to cover wages for the additional staff to perform non–tipped cleaning and sorting duties, (Doc. 39–1, pp. 64:18 – 67:2).

Stone Age required its managers to track the tips or "commissions" deducted from the plaintiffs' compensation and calculate their pay. (Doc. 39–1, pp. 81:1 – 84:17). This information was sent to Stone Age's accountants, who prepared payroll checks for Mr. Jiang's signature. (Doc. 39–1, pp. 81:1 – 84:17). Mr. Jiang was responsible for signing Stone Age checks; although all owners were authorized to sign payroll checks, he normally signed them. (Doc. 39–1, pp. 50:23 – 52:6).

Stone Age's managers interviewed and trained new employees. (Doc. 39–1, pp. 29:13 – 32:16, 56:6–23). According to his declaration, Mr. Jiang does not hire or fire employees, control their schedules, determine their rates of pay, maintain their payroll records, or handle the distributions of the plaintiffs' tips. (Doc. 45–1 at ¶¶ 5–9). Screen shots of text messages purporting to be from Stone Age managers indicate that Mr. Jiang instructed them to terminate the employment of plaintiffs Hunter and Huerta after Mr. Jiang was served with the complaint in this action. (Doc. 27–15, pp. 1–2; Doc. 27–16, pp. 1–2).

**III.**

**A.**

As noted, in their motion for partial summary judgment, Stone Age and Mr. Jiang ask the Court to dismiss the plaintiffs' state law claims for breach of contract, unjust enrichment, and conversion, (Doc. 10, pp. 24–26), and dismiss the plaintiffs' FLSA claims against Mr. Jiang because he is not an "employer" under the FLSA. (Doc. 44, pp. 2–3). The plaintiffs concede that the Court should dismiss the state law claims. (Doc. 48, p. 13). Accordingly, the Court grants the defendants' motion for partial summary judgment with respect to counts four (breach of contract), five (unjust enrichment), and six (conversion) of the plaintiffs' amended complaint.

As to the FLSA claim against Mr. Jiang, in the Eleventh Circuit, district courts must use the following test to determine whether an individual may be liable as an employer under the FLSA:

> The Act creates a private right of action against any employer who violates its minimum wage or overtime provisions. 29 U.S.C. § 216(b). The Act defines "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Id*. § 203(d). Whether an individual fits this definition turns not on "technical or isolated factors but rather on the circumstances of the whole activity." *Alvarez Perez v. Sanford–Orlando Kennel Club, Inc*., 515 F.3d 1150, 1160 (11th Cir. 2008) (citation and internal quotation marks omitted)

*Spears v. Bay Inn & Suites Foley, LLC*, 105 F.4th 1315, 1319 (11th Cir. 2024). "To be an employer under the Act, a supervisor 'must either be involved in the day–to–

day operation or have some direct responsibility for the supervision of the employee.'" *Spears*, 105 F.4th at 1319 (quoting *Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986)). "Involvement in the day–to–day operations of a company can include regular visits to the company's facilities, the power to determine employee salaries, involvement in the business operations of the company, or control over the company's purse strings." *Spears*, 105 F.4th at 1319 (citing *Alvarez Perez v. Sanford–Orlando Kennel Club, Inc*., 515 F.3d 1150, 1160 (11th Cir. 2008)).

As noted, in his declaration, Mr. Jiang states that he does not hire or fire employees, control their schedules, determine their rates of pay, maintain their payroll records, or handle the distributions of the plaintiffs' tips. (Doc. 45–1 at ¶¶ 5–9). Mr. Jiang owns 20% of Stone Age. (Doc. 39–1, pp. 15:8–18:5, 60:6–61:18). Stone Age and Mr. Jiang admit that "they operate a restaurant in Huntsville, Alabama," "they employed Plaintiffs," and Mr. Jiang "possessed authority to act on behalf of Stone Age." (Doc. 11, ¶¶ 26, 27, 28; Doc. 27–9, p. 6). Mr. Jiang described his duties on behalf of Stone Age as including managing the kitchen, signing off on payroll, and writing checks and making payments for supplies. (Doc. 39–1, pp. 14:3 – 15:7). Mr. Jiang routinely signed payroll checks. (Doc. 39–1, pp. 50:23 – 52:6). And, text messages from Stone Age's managers indicate that Mr. Jiang instructed the managers to terminate Ms. Hunter's and Ms. Huerta's employment after Mr. Jiang

was served with the complaint in this action. (Doc. 27–15, pp. 1–2; Doc. 27–16, pp. 1–2).

A reasonable jury could find this evidence sufficient to establish that Mr. Jiang is involved in Stone Age's day–to–day business operations and has control over the company's purse strings. That evidence is sufficient to raise a genuine issue of material fact regarding Mr. Jiang's status as an employer under 29 U.S.C. § 216(d). *See Spears*, 105 F.4th at 1319. Accordingly, a jury must determine whether Mr. Jiang was the plaintiffs' employer under § 216(b).

**B.**

In their motion for partial summary judgment, the plaintiffs ask the Court to find as a matter of law that Mr. Jiang is an employer under 29 U.S.C. § 203(d); that the defendants' policy and practice of taking a percentage of servers' tips violates 29 U.S.C. § 203(m)(2)(B); and that the plaintiffs' compensatory damages include the tip credit plus the tips that the defendants wrongfully took from the plaintiffs. (Doc. 40, p. 2). The evidence discussed above creates a disputed issue of fact regarding Mr. Jiang's status as an FLSA employer. Mr. Jiang's declaration appears somewhat inconsistent with portions of his deposition testimony, but he attributes the discrepancies to the fact that his native language is Mandarin, and he and the interpreter had difficulty understanding some of the questions during his deposition. (Doc. 53, pp, 1–2). Because the discrepancies are not sufficient to cause the Court

to have to disregard Mr. Jiang's declaration, for purposes of the plaintiffs' summary judgment motion, the Court must accept his "self–serving statements based on personal knowledge or observation." *Stein*, 881 F.3d at 857 (citing *Feliciano*, 707 F.3d at 1253). On this record, there is a genuine issue of material fact for a jury to resolve on the issue of whether Mr. Jiang satisfies the test for individual liability under the FLSA.

The tip credit evidence in this case is another matter. The FLSA allows employers to pay "tipped employees" such as restaurant servers less than $7.25 per hour if the difference is supplemented with the employees' tips. 29 U.S.C. § 203(m)(2). This exception to the general minimum wage requirement is known as the "tip credit." *See Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 188 (5th Cir. 2015). "Section 203(m)(2)(B) prohibits employers from keeping 'tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit.'" *Volpe v. VMSB LLC*, No. 23–CV–23888–RAR, 2025 WL 947508, at *13 (S.D. Fla. Mar. 28, 2025) (quoting 29 U.S.C. § 203(m)(2)(B)). Department of Labor regulations explain that "an employer 'is prohibited from using an employee's tips, whether or not it has taken a tip credit, for any reason other than that which is statutorily permitted in section 3(m): As a credit against its minimum wage obligations to the employee, or in furtherance of a valid tip pool.'" *Kubiak v. S.W.*

*Cowboy, Inc*., 164 F. Supp. 3d 1344, 1355 (M.D. Fla. 2016) (citing Title 29 C.F.R. § 531.52).

"The 29 U.S.C. § 203(m) tip credit is an affirmative defense to the payment of minimum wage." *Weinstein v. 440 Corp*., 2022 WL 21794705, at *4 (N.D. Ga. Apr. 1, 2022), *aff'd*, 146 F.4th 1046 (11th Cir. 2025) (citing *Barcellona v. Tiffany English Pub, Inc*., 597 F.2d 464, 467 (5th Cir. 1979)). "The burden to prove compliance with the tip credit remains with the employer even on summary judgment." *Weinstein*, 2022 WL 21794705, at *4 (citing *Nail v. Shipp*, 2019 U.S. Dist. LEXIS 132072, at *26 (S.D. Ala. 2019) (in turn citing *Inclan v. New York Hosp. Grp., Inc*., 95 F. Supp. 3d 490, 498 (S.D.N.Y. 2015))).

"To receive the tip credit, the employer must show: (1) that the employee receiving tips qualifies as a 'tipped employee'; (2) that it provided the employee with notice of its intention to claim the tip credit; and (3) that the employee retains all tips they received, unless the employee participates in a tip–pool that redistributes a portion of those tips to employees 'who customarily and regularly receive tips.'" *Weinstein*, 2022 WL 21794705, at *4 (citing 29 U.S.C. § 203(m)(2)(A)(ii)). "If the employer fails to prove that it complied with 29 U.S.C. § 203(m), the employee is 'entitled to the full minimum wage for every hour worked.'" *Weinstein*, 2022 WL 21794705, at *4 (citing *Barcellona*, 597 F.2d at 467).

The record establishes that Stone Age violated 29 U.S.C. § 203(m) in two ways. First, Stone Age retained a portion of the plaintiffs' tips and redistributed them to managers and other non–tipped employees, *i.e.*, employees who do not customarily and regularly receive tips. Second, Stone Age retained a portion of the plaintiffs' tips in its general account. (Doc. 39–1, pp. 129:1 – 131:4). Per policy, Stone Age used these funds, for example, for "general wear and tear of the establishment." (Doc. 27–14; Doc. 27–8, pp. 8–9).

Mr. Jiang, who testified as Stone Age's corporate representative, stated that managers received a portion of the retained tips as a bonus:

> [O]ur manager will send the – the calculation to our accountant, and then our accountant will deduct the 3 percent from the servers' payroll, and after that — because this 3 percent should be the bonus for the managers and for the bartenders based on how much alcohol they have sold. So then this 3 percent will be added up to the manager or the bartender's payroll as the bonus for them.

(Doc. 39–1, pp. 9:4–22, 62:11 – 63:20). Mr. Jiang also testified that Stone Age increased the deduction from the plaintiffs' tips to cover wages for staff Stone Age hired to cleaning and sort, work Stone Age initially required tip credit employees to perform at their reduced hourly rates of $2.13 or $4.00. (Doc. 39–1, pp. 64:18 – 67:2).

The defendants argue that the Court should deny the plaintiffs' motion because "Stone Age did not keep the Plaintiffs' tips, but rather used [those] funds to pay for expenses and wages allowed under the FLSA." (Doc. 46, p. 14). Even if Stone Age

used some of the tip pool to pay for expenses and wages allowed under the FLSA, the undisputed evidence establishes that Stone Age used at least a portion of the plaintiffs' tips for prohibited uses, namely bonuses for managers and wages for employees who performed non–tipped work. This undisputed evidence establishes as a matter of law that Stone Age violated 29 U.S.C. § 203(m)(2)(B).[1]

The plaintiffs also seek partial summary judgment on the issue of whether their compensatory damages include the amount of the tip credit plus the wrongfully retained tips. (Doc. 40, pp. 17–18). The plaintiffs acknowledge that "[l]imited case law, and no Eleventh Circuit case law, addresses whether a plaintiff's complete recovery for tip–pool violations includes the tip credit *plus* the tips that the plaintiff contributed to the pool and were wrongfully distributed to ineligible employees." (Doc. 40, pp. 17–18) (citing *Holloway v. Rocchio Tunnel Marketplace Enters., LLC*, No. 15–61586–CIV, 2016 WL 4411346, at *3 (S.D. Fla. Feb. 29, 2016) (emphasis in original). "Most courts have found such damages limited to the tip credit retained by the employer." *Holloway*, 2016 WL 4411346, at *3 (collecting cases). In *Holloway*, the district court concluded that, "based on the Court's review of the limited case law, an award of the tip credit *plus* the wrongfully retained tips appears to be limited to those situations where the person retaining the tips has an ownership

[1] Mr. Jiang argues that he did not receive the plaintiffs' tips personally. (Doc. 46, p. 12). The Court is not aware of evidence that suggests otherwise.

interest in the business." *Holloway*, 2016 WL 4411346, at *3 (citing *Chung v. New Silver Palace Rest., Inc*., 246 F. Supp. 2d 220, 230 (S.D.N.Y. 2002)) (emphasis in *Holloway*).

The plaintiffs have not presented evidence that Mr. Jiang retained their tips for himself, and they have not identified Eleventh Circuit precedent on this issue. Absent controlling precedent, the Court declines to hold as a matter of law that the wrongfully retained tips are available as damages.

## CONCLUSION

For the reasons discussed above, the Court grants in part and denies in part the parties' motions for partial summary judgment. The Court enters judgment for the plaintiffs on their claim that Stone Age's policy and practice of taking a percentage of servers' tips and using them for bonuses for managers, funding the wages of other employees, and "wear and tear" violates 29 U.S.C. § 203(m)(2)(B). The Court dismisses the plaintiffs' state law claims in counts four (breach of contract), five (unjust enrichment), and six (conversion) of the plaintiffs' amended complaint. In all other respects, the Court denies the parties' motions for partial summary judgment.

Two other motions are pending in this case: the plaintiffs' motion for collective action certification and court–facilitated notice, (Doc. 26), and the defendants' motion for additional time complete discovery, (Doc. 35). The Court

denies these motions without prejudice. The parties shall meet and confer and consider whether they should mediate. Within 14 days of entry of this memorandum opinion and order, the parties must file a joint report and indicate whether they wish to mediate.

The Clerk of Court shall please TERM Docs. 26, 35, 38, and 42.

**DONE** and **ORDERED** this September 22, 2026.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE